**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ENOVATIVE TECHS., LLC,                    *

                                          *

   Plaintiff

                                          *

   v.                                     *            CIVIL NO. JKB-14-3956

                                          *

GABRIEL REUVEN LEOR

                                          *

   Defendant                             *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

<u>**MEMORANDUM**</u>

On May 13, 2015, Plaintiff Enovative Technologies, LLC, filed a second motion for sanctions, contempt, attorneys' fees, and costs.  (ECF No. 178.)  On May 14, the Court ordered Defendant Gabriel Leor to respond on or before May 29, 2015, and scheduled a show cause hearing for June 2, 2015 at 10:00 a.m.  (ECF No. 179.)  Defendant failed to file a response.  The hearing was subsequently rescheduled by court order (ECF No. 181), and was held on June 4, 2015 to address Plaintiff's pending motion (ECF No. 178) and the Court's order to show cause (ECF No. 179).  For the reasons stated in open court and explained further below, Plaintiff's motion for sanctions, contempt, attorneys' fees, and costs will be GRANTED IN PART AND DENIED IN PART.

*I.  Background*

On January 5, the Court held a hearing to assess Plaintiff's motion for a preliminary injunction.  (ECF No. 3.)  At the end of the hearing, after considering all of the evidence presented by both parties, the Court projected that it would grant Plaintiff's motion and enter a preliminary injunction order.  (Prelim. Inj. Tr. at 109, Jan. 5, 2015, ECF No. 219.)  The Court then warned Defendant that "to knowingly not comply with [a preliminary injunction order]

could amount to a contempt of the Court.  And contempts are punishable by various sanctions; including in some cases even imprisonment, the loss of your liberty.  Do you understand that?" (*Id.* at 112.)  Defendant responded: "I understand that, Your Honor."  (*Id.*)

On January 6, 2015, the Court issued a preliminary injunction (ECF No. 19) requiring that Defendant immediately take the following affirmative actions: (1) transfer control of the Magic Massage website (*id.* ¶ 3); (2) remove from the Internet all offensive and/or defamatory postings relating to Plaintiff, including, but not limited to, content on http://www.smart-relief.com and http://www.magicmassageultra.com (*id.* ¶¶ 2, 6); and (3) return any and all of Plaintiff's confidential information to Plaintiff (*id.* ¶ 12).  Defendant was also enjoined from, *inter alia*, disparaging and defaming Plaintiff to any further extent (*id.* ¶ 1), and from harassing or threatening Plaintiff and people associated with Plaintiff (e.g., customers, investors, etc.) (*id.* ¶ 9).

On February 12, 2015, the Court held its first contempt hearing for alleged violations of the preliminary injunction.  Defendant was allowed to, and did, appear telephonically in this first contempt hearing.  On February 19, the Court found that Defendant had violated the Court's preliminary injunction order as follows: (1) Defendant failed to transfer exclusive control of the Magic Massage website to Plaintiff; (2) Defendant failed to remove all offensive and/or defamatory postings related to Plaintiff on the www.smart-relief.com and www.magicmassageultra.com websites, as well as offensive postings on the "Staci Markets" Facebook page; and (3) Defendant failed to return any and all confidential information to Plaintiff.  (ECF No. 47.)  For these reasons, the Court held Defendant in civil contempt and ordered that Defendant could only purge such contempt by complying with the Court's preliminary injunction order.  (*Id.*)  To coerce obedience, the Court ordered that Defendant

would incur a daily fine of $1000, payable to the United States, until Defendant purged himself of such contempt.  (*Id.*)

On May 13, 2015, Plaintiff filed a second motion for sanctions, contempt, attorneys' fees and costs, alleging that Defendant continues to willfully violate the Court's preliminary injunction order.  (ECF No. 178.)  On May 14, the Court issued an order to show cause, directing Defendant to respond to Plaintiff's motion on or before May 29, and further ordering that "all counsel of record and the Defendant SHALL PERSONALLY APPEAR" at a hearing set for June 2, 2015.  (ECF No. 179.)  The next day, on May 15, the Court rescheduled this show cause hearing to be held on June 4, 2015.  (ECF No. 181.)  Defendant never filed a response to Plaintiff's motion.

## II.  Findings of Fact

For the reasons stated in open court, as well as those discussed here, the Court makes the following findings of fact:

The Court held its show cause hearing on June 4, 2015.  Defendant failed to appear.  As a threshold matter, the Court finds that Defendant had adequate notice of these proceedings.  The Clerk mailed a copy of the show cause order that scheduled the hearing (ECF No. 179), and the order rescheduling the hearing (ECF No. 181), to Defendant's mailing address in Thailand, as provided to the Court by Defendant.  (ECF No. 34 at 4.)  Further, an employee of the Court testified that she e-mailed copies of these orders directly to Defendant's personal e-mail address, as a courtesy, to ensure that Defendant would receive notice of the proceedings.  The Court has previously communicated effectively with Defendant via Defendant's personal e-mail address, at his request.  In fact, Defendant received Plaintiff's service of the summons at this very same e-mail address.  (*See* ECF Nos. 9, 10, 11, 12.)  Defendant failed to provide the Court with good

cause for his failure to appear.  Thus, Defendant violated the Court's order directing that he personally appear for the show cause hearing.

The Court proceeded to conduct the show cause hearing in Defendant's absence upon a finding that he had waived his right to be there and participate, and now the Court finds that Defendant continues to violate the Court's preliminary injunction by failing to: (1) transfer control of the Magic Massage website; (2) remove offensive content from the Internet; and (3) return confidential information.  As of the morning of June 4, 2015, the day of the show cause hearing, Defendant had failed to comply with the Court's order for 104 days, accruing a total of $104,000 payable to the United States.  Defendant has exhibited an unwillingness to comply with the Court's order, despite the costly fine associated with such noncompliance.  (The Court now finds that continued fines would prove futile, and therefore will suspend the accrual of new daily fines.  The amount accrued to date, $104,000, remains owing to the United States.)

In addition to Defendant's continued contempt, the Court now finds that Defendant is responsible for a litany of harassing communications originating from Defendant's many pseudonymous e-mail and social media accounts, and aliases.  Based on testimony presented at the show cause hearing, the Court finds that Defendant is either directly in control of these accounts and aliases, or that they are being used at Defendant's direction.  These accounts include, but are not limited to: the "Magic Massage Thailand" Facebook profile, "gabriel@smartmassageshop.com," "guylevimassager@gmail.com," "sellmybusiness1987@gmail.com," all e-mails associated with the "enovativetechnologiesllc.com" domain, the username "peter.anderson1123," the alias "John Collins," and the alias "Guy Levi."

Defendant has used these accounts and aliases to ridicule, insult, and commercially injure Plaintiff, and to harass and intimidate Plaintiff and people associated with Plaintiff.  (*See generally* ECF No. 178-4 to 178-26.)  In addition to Defendant's penchant for anonymous

harassment, Defendant now also harasses under his own name.  Defendant's motion to disqualify Plaintiff's counsel devolves into obscene characterizations of Plaintiff's counsel.  (ECF No. 165.)  Defendant contends that Mr. Fabian Rosado[1] once referred to Plaintiff's counsel as "the best bitch money could buy,"[2] and describes Plaintiff's counsel's litigation tactics as "bitchiness."  (*Id.* ¶¶ 11-12.)  Defendant also argues, in support of his motion to disqualify counsel, that "[t]he legal issue now is whether 'Fuck Her in the Pussy' is a reference to [Plaintiff's counsel] herself, and not to [Plaintiff]."  (*Id.* ¶ 12.)  Defendant's odious "allegation," unfortunately, requires additional context, discussed *infra*.  Beyond those outrageous comments appearing in Defendant's court filing, Plaintiff's counsel testified that Defendant recently called her and threatened "I will fucking come after you."  Upon the testimony presented during the hearing, some of which was in response to questioning by the Court, the Court now finds that Defendant did in fact make these obscene characterizations and references, and the threat.

### III. Analysis

With these findings, Plaintiff requests that the Court take the following actions: (1) find Defendant in civil contempt and order that he be incarcerated; (2) sanction Defendant by dismissing his counterclaim; (3) sanction Defendant by issuing judgment for Plaintiff; and (4) sanction Defendant by awarding attorneys' fees to Plaintiff.  The Court addresses each request in turn, and bases its determinations both on the reasons stated in open court as well as those determinations of law and fact discussed here.

#### A. Civil Contempt; Criminal Contempt

The Court holds both that Defendant remains in civil contempt under the Court's prior contempt order (ECF No. 47), and that Defendant is found in civil contempt once again based on

---

[1] Mr. Rosado is "a member of [Plaintiff's] management team."  (ECF No. 1 ¶ 34.)
[2] After hearing testimony during the hearing, the Court does not credit this contention of Defendant and instead finds it to be scurrilous and untrue.

new evidence.  The Court "may impose sanctions for civil contempt to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (internal quotation marks omitted). Having found that an ongoing fine has proven futile, discussed *supra*, the Court must consider a more severe sanction.  Incarceration, like other contempt sanctions, is proper upon a finding of civil contempt as long as the purpose is to coerce compliance with a court's order, rather than to punish for the contemnor's failure to comply.  *See Shillitani v. United States*, 384 U.S. 364, 369 (1966) ("Despite the fact that [the contemnors] were ordered imprisoned for a definite period, their sentences were clearly intended to operate in a prospective manner—to coerce, rather than punish.  As such, they relate to civil contempt.").

Here, Defendant continues to violate the Court's preliminary injunction and has done so for several months.  Further, Defendant violated the Court's orders that he respond to Plaintiff's motion on or before May 29, 2015, and that he personally appear for the show cause hearing. (*See* ECF No. 179.)  Thus, the Court will order that a warrant be issued for Defendant's immediate arrest and that he be held in jail as a coercive sanction for civil contempt, unless and until he purges himself of contempt and complies with the preliminary injunction.

The Court also notes that it now may be appropriate that Defendant face a charge of criminal contempt.  Defendant has continued to harass Plaintiff and people associated with Plaintiff, as well as to spread defamatory content about Plaintiff.  He has impersonated Plaintiff's employees in ways that have caused harm.  He has falsely stated on social media and on Plaintiff's now-hijacked website that Plaintiff is under investigation by the Food and Drug Administration ("FDA"), and he may have falsely implied that an FDA official endorses criticism of Plaintiff and its products.  Defendant's conduct appears to be willful, and in knowing violation of the Court's preliminary injunction order.  Thus, prosecution for criminal contempt

and imposition of punitive sanctions may be justified.  This matter will be referred to the United States Attorney for this district for his consideration.

### B. *Plaintiff's Request for Sanctions: Dismissal of Defendant's Counterclaim*

Plaintiff requests that the Court dismiss Defendant's counterclaim (ECF No. 57) as an added sanction.  "Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates."  *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993).  "A court's inherent power includes the ability to order the dismissal of a case, though such orders must be entered with the greatest caution."  *Projects Mgmt. Co. v. Dyncorp. Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013).  A court may dismiss a claim "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process."  *Shaffer*, 11 F.3d at 462.  In deciding whether dismissal of a claim is an appropriate sanction, courts typically consider six factors:

> (1) The degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, . . . (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

*Id.* at 462-63.

The Court recognizes that dismissal of claims is a severe penalty, and the Court will only impose such a sanction under exceptional circumstances.  After having carefully considered all of the evidence, the Court finds that such exceptional circumstances are present in this case. Defendant has shown complete disdain for the Court's authority for several months, as evidenced by his continuing violation of the Court's preliminary injunction order. More significantly, though, Defendant has now directed his animosity towards Plaintiff's counsel.

Regrettably, some context is necessary.  At the Court's preliminary injunction hearing on January 5, 2015, Plaintiff presented evidence of an obscene video that Defendant had posted to one of Plaintiff's websites (*see* ECF No. 17, Ex. 19)—websites over which the Court has found he wrongfully maintains exclusive control (*see* ECF No. 19 ¶¶ 2, 6).  The video consisted of a man wearing a hooded sweatshirt, interrupting multiple supposed strangers to shout "Fuck her right in the pussy."  The Court found that the posting of this video vandalized Plaintiff's company website, and ordered Defendant to remove the video.  (ECF No. 19.)[3]  Now, in Defendant's motion to disqualify Plaintiff's counsel, Defendant states that "[t]he legal issue now is whether 'Fuck Her in the Pussy' is a reference to [Plaintiff's counsel] herself, and not to [Plaintiff]."  (ECF No. 165 ¶ 12.)

The Court is not unmindful that this vulgar video clip, and others like it, gained a certain underground popularity in 2014.  In fact, the gross content of the video was supposedly publicly referenced by a prominent college athlete in the midst of a misconduct investigation.  *See* Marc Tracy, *Jameis Winston Suspended for First Half of Florida State-Clemson Game*, New York Times (Sept. 17, 2014), http://www.nytimes.com/2014/09/18/sports/ncaafootball/jameis-winston-suspended-for-first-half-against-clemson.html; Jessica Glenza, *Jameis Winston Suspended for Whole Game as FSU Extends Quarterback's Ban*, The Guardian (Sept. 20, 2014, 11:54 a.m.), http://www.theguardian.com/sport/2014/sep/20/jameis-winston-fsu-ban-comments-football.  The Court does not comment on what value or cost, comedic or otherwise, this video carries for society.

That said, the Court will not allow the judicial process to be subject to, or diminished by, Defendant's disparaging use of this vile video or its content.  In filing his motion to disqualify

---

[3] The Court notes that Defendant has failed to remove this offensive content from Plaintiff's "Staci Markets" Facebook page (ECF No. 178-26), over which the Court finds Defendant retains control, despite the direction in the preliminary injunction to remove all such damaging and offensive content from the Internet  (ECF No. 19 ¶ 2).

counsel (ECF No. 165), and in implying that this video in any way relates to Plaintiff's counsel, Defendant now attempts to use the Court's own docketing system, and this judicial forum, as a vehicle to harass an officer of this Court.  Defendant's "motion" is not an appropriate filing, but rather an abhorrent screed serving no legitimate purpose in this litigation.  *The Court won't tolerate it.*  It will not sit idly by while Defendant uses the Court's docket to perpetuate and publicize his outrageous attacks on, and sexual harassment of, Plaintiff's counsel.

Then there is the matter of Defendant's obscene telephone threat to Plaintiff's counsel.  It was a crude and outrageous statement made to intimidate the attorney.  It was gross misconduct, certainly worthy of a stiff sanction if not a criminal charge.

With these appalling circumstances in mind, the Court now turns to the six factors that must be considered in determining whether the Court should dismiss Defendant's counterclaim as a sanction.  Under the first and second factors, the Court finds that the degree of Defendant's culpability, and the extent of the client's blameworthiness (as a *pro se* Defendant) are both extreme.  Third, Defendant's actions have been clearly prejudicial to the judicial process and the administration of justice.  To date, months after this action was filed, the Court remains focused only on preliminary matters such as Defendant's conduct in litigating this matter.  Defendant's poor conduct has kept the focus on his behavior, with little time left for litigating the actual claims.  Fourth, Plaintiff and people associated with Plaintiff have suffered considerably as a result.  Defendant has essentially stalled the Court's proceedings, running up Plaintiff's legal fees all the while subjecting Plaintiff and people associated with Plaintiff to abusive harassment. Fifth, the Court has attempted to use other, less severe sanctions to rectify the wrongs caused by Defendant.  As discussed *supra*, the Court instituted a daily fine after finding Defendant in civil contempt, and Defendant continued his contemptuous behavior for the next 104 days.  The Court will now issue a warrant for Defendant's arrest, but Defendant regularly travels abroad and it is

not apparent if or when he will be apprehended.  Dismissal of Defendant's counterclaim is a necessary sanction to begin to rectify the wrongs committed by Defendant in the course of this litigation.  Finally, the public interest is served by the Court's dismissal of Defendant's counterclaim.  Defendant continues to waste judicial, and thus taxpayer, resources while ignoring the Court's orders and abusing the opposing party.

Defendant has exhibited a profound lack of respect for the Court and the judicial process, and instead resorts to damaging and arguably criminal self-help.  He disobeys and defies the Court's orders.  With Defendant's most recent actions, and in particular with the filing of his vile motion to disqualify Plaintiff's counsel, Defendant has attempted to make a crude joke of the Court's serious and necessary function.  He has threatened opposing counsel.  The Court will not now allow Defendant to use the very system of justice that he mocks and trashes to pursue his own claims, at least not while he continues his bad behavior.  Thus, as a sanction, the Court will dismiss Defendant's counterclaim (ECF No. 57).

### C.  *Plaintiff's Request for Sanctions: Default Judgment for Plaintiff*

Somewhat in conflict with the Court's musings during the hearing, it now concludes that default judgment is not an appropriate sanction at this time.  As discussed *supra*, the Court should refrain from such a severe sanction where other sanctions may rectify the wrong.  Here, the Court will issue a warrant for Defendant's arrest, incarcerate him until he purges his contempt, order him to pay attorneys' fees, and dismiss his counterclaim.  Such sanctions are sufficient, for now.  That said, Plaintiff may move the Court for default judgment if it can support an allegation that Defendant is in violation of Federal Rule of Civil Procedure 37(b), or on other provable grounds in the future, or to issue summary judgment if there are grounds.  Questions remain, however, as to what remedies would be available to Plaintiff if the Court

eventually enters default judgment for Plaintiff.  CONTRARY TO THE DIRECTION DURING THE HEARING, no briefing on that issue is requested now.

### D. *Plaintiff's Request for Sanctions: Attorneys' Fees*

Defendant must also pay Plaintiff's reasonable attorneys' fees for costs incurred as a result of Defendant's contumacy.  *See Gen. Motors*, 61 F.3d at 258 (holding that a court may impose sanctions "to compensate the complainant for losses sustained as a result of the contumacy").  Before the Court will award such fees, however, Plaintiff's counsel must submit an affidavit in support of Plaintiff's request for attorneys' fees and costs, including the fractions of hours and the work that was performed, as well as who performed the work with billing rates.  For guidance, Plaintiff's counsel may refer to her earlier affidavit filed after the first contempt hearing.  (*See* ECF No. 45.)

## IV. Conclusion

Accordingly, an order will issue GRANTING IN PART AND DENYING IN PART Plaintiff's motion for sanctions, contempt, and attorneys' fees and costs (ECF No. 178).

DATED this __8th__ day of June, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge